Stacy L. Fode (SBN 199883)
sfode@nfclegal.com
Natalie P. Bryans (SBN 342396)
nbryans@nfclegal.com
**NUKK-FREEMAN & CERRA, P.C.**
1230 Columbia Street, Suite 860
San Diego, CA 92101
Telephone: 619.292.0515
Facsimile: 619.566.4741

Leonard Weintraub
(*Pro Hac Vice* Application Forthcoming)
lw@pwlawyers.com
**PADUANO & WEINTRAUB LLP**
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
Telephone: (212) 785-9100

Attorneys for Plaintiffs
CITIBANK, N.A. and CITIGROUP GLOBAL MARKETS INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITIBANK, N.A. and CITIGROUP GLOBAL MARKETS INC., <br><br> Plaintiffs, <br><br> vs. <br><br> JOHN A. MITCHELL and BENJAMIN C. CARR, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR:** <br><br> 1. **BREACH OF CONTRACT** <br><br> 2. **MISAPPROPRIATION OF TRADE SECRETS** <br><br> 3. **CONVERSION** <br><br> 4. **BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY** <br><br> **INJUNCTIVE RELIEF SOUGHT** |

_____
COMPLAINT

Plaintiffs CITIBANK, N.A. ("Citibank") and CITIGROUP GLOBAL MARKETS INC. ("CGMI") (collectively, "Citi" or "Plaintiffs") file this Complaint against defendants JOHN A. MITCHELL ("Mitchell") and BENJAMIN C. CARR ("Carr") (collectively, "Defendants"), and allege as follows:

**Preliminary Statement**

1. This action is for a temporary restraining order and a preliminary injunction to maintain the status quo pending resolution of an arbitration proceeding between Citi and Defendants before FINRA Dispute Resolution.[1]

2. On July 19, 2024, Defendants gave notice of their resignation of employment from Citi. Defendants resigned in concert with fifteen other former Citi employees. Due to contractual obligations, Mitchell was required to give 75-days advance written notice of his intention to resign from Citi – during which he would continue to be employed by Citi. Thus, Mitchell's resignation became effective and his employment with Citi terminated on October 2, 2024, after which he immediately became affiliated with BMO Wealth Management, which, on information and belief, is a division of BMO Capital Markets Corp. ("BMO") (along with the other fifteen former Citi employees). Carr provided two weeks' written notice, and his resignation became effective August 2, 2024. On information and belief, Carr also joined BMO after October 2, 2024. At the time of their resignations, Mitchell was a Private Banker and Banker Team Lead in the Law Firm Group of Citi Global Wealth at Work, and Carr was a Private Banker under Mitchell who worked in the Law Firm Group of Citi Global Wealth at Work. Both Mitchell and Carr worked at Citi offices in San Francisco, California.

---

[1] The Financial Industry Regulatory Authority ("FINRA") was created in July 2007 through the consolidation of the National Association of Securities Dealers, Inc. and the member regulation, enforcement and arbitration functions of the New York Stock Exchange. Citi has the express right to seek temporary injunctive relief before a court of competent jurisdiction pending the outcome of arbitration before a full panel of duly-appointed arbitrators pursuant to Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes. A true and correct copy of Rule 13804 is attached to this Complaint as **Exhibit B**. On October 28, 2024, Plaintiffs commenced an arbitration against Mitchell (and others) before FINRA Dispute Resolution as a result of Mitchell's improper conduct in soliciting Citi employees during his Citi employment to leave Citi and join BMO. Citi is in the process of amending such arbitration claim to add Carr as a respondent.

-2-

COMPLAINT

3. Defendants entered into agreements with Citi and have obligations to Citi requiring them to maintain the confidentiality of Citi's confidential and proprietary business and client information after their employment with Citi ends. This agreement is required of most all Citi employees in the United States.

4. Since Defendants' employment with Citi terminated and they joined BMO, Citi has learned that Defendants likely took or retained confidential and proprietary information relating to Citi and its clients and are using it at BMO.

5. Specifically, on information and belief, Defendants took or retained, among other information, confidential and proprietary information relating to the cash positions and products held by Citi clients they formerly serviced, including information relating to the maturity dates of Certificates of Deposits held by Citi clients.

6. On November 4, 2024, Mitchell sent an email, as a BMO employee, to a Citi client he formerly serviced comparing the current interest rates for a Certificate of Deposit ("CD") being offered by BMO and Citi, stating that the deposit rates he can offer at BMO "are better than Citi." Most alarmingly, Mitchell sent this email to the Citi client specifically referencing the client's "high cash position" and on the *exact day* – November 4, 2024 – that the client's multi-million dollar CD at Citi matured. That is, the very day the client had to decide whether to "roll-over" her CD at Citi, Mitchell "appeared" to offer the client a purportedly more attractive offer with BMO.

7. The client forwarded to Citi a copy of Mitchell's November 4, 2024 email, a copy of which is attached to this Complaint as **Exhibit A** (with the client's name, email address and employer information, as well as the CD rates offered, redacted). The email Mitchell sent to the client states as follows:

> I hope this finds you and the family doing well. I'm now at BMO Private Bank and was hoping to connect to discuss our strong Private Bank platform and relationship with [CLIENT EMPLOYER REDACTED]. Are you amendable to a call this week or next?
>
> *I also wanted to share the deposit rates I can offer are better than Citi. I thought this was especially relevant given your high cash*

*position.* See below and let me know if you have any questions.
(Exhibit A, emphasis added.)

8. Citi is greatly concerned that Defendants have sent – or will send – similar emails to other Citi clients on or about the maturity dates of their Citi CDs offering to help them with purportedly better CD rates at BMO, using information they improperly took or retained from Citi.

9. On information and belief, there is no way that Defendants could be aware of the client's cash balances and the maturity dates of the CD without taking or retaining such confidential and proprietary information from Citi upon their departure. It strains credulity to believe that it is simply a coincidence that Mitchell sent the Citi client this email comparing BMO CD rates to Citi CD rates on the exact date that the client's CD matured and was set to renew without the use of Citi confidential and proprietary information, which he is not permitted to use or retain after his employment ended.

10. On July 17, 2024 – less than 48 hours before Defendants gave notice of their resignations, Carr engaged in highly unusual activity on Citi's internal computer system by running three different types of searches – one search was done three times, for a total of five searches – on Salesforce (Citi's customer relationship management platform), including a search for "my clients." The information accessed by Carr on July 17, 2024 is highly confidential, including Citi client lists and identifying Citi clients who had large cash balances. The information obtained by such search would have indicated the names of Citi clients and at a minimum, their cash balances. On information and belief, the client to whom Mitchell sent the email attached hereto as **Exhibit A** – who was assigned to Carr and also known to Mitchell – was one of the clients contained in at least two of the reports accessed by Carr (including the "my clients" search).

11. Prior to accessing this detailed client information just two days before giving notice of his resignation, Carr had not accessed any of these files on Salesforce at any point from June 24 through July 16, 2024 (June 24 was the farthest back that Citi was able to search). Thus, it is apparent that Carr's search two days before he resigned was not done in the ordinary course

-4-

COMPLAINT

of business while working on behalf of Citi.  There was no legitimate reason for Carr to access this information at that time.

12. On information and belief, Carr took such client information with him from Citi to his new firm (by some means of capture or duplication, whether by taking photos of the computer screens with his cell phone, copying, or via some other means), and Mitchell used such information at BMO to try to convince a Citi client to move their CD to BMO.

13. At the time of his resignation, Mitchell was responsible for overseeing approximately 450 law firms and their partners/associates at Citi, with a total of approximately $497 million in assets.  All of these relationships formerly serviced by Mitchell were assigned by Citi's Law Firm Group to Mitchell to service.

14. At the time of his resignation, Carr serviced approximately 570 law firms and their partners/associates at Citi, with a total of approximately $152 million in assets.  All of these relationships formerly serviced by Carr were assigned by Citi's Law Firm Group to him to service.

15. Defendants' conduct constitutes a breach of their agreements with Citi, which contain confidentiality provisions, and a violation of their common-law obligations to Citi.

16. To prevent continued irreparable harm arising from Defendants' course of misconduct, Citi seeks immediate injunctive relief (in the form of a temporary restraining order and a preliminary injunction) barring Defendants from further using and compelling the return of Citi's confidential and proprietary business and client information, pending resolution of Citi's claims in a related arbitration that Citi has commenced.

## Jurisdiction and Venue

17. The Court has jurisdiction in this action pursuant to 28 U.S.C. § 1332(a) in that, as alleged below, Plaintiffs, on the one hand, and Defendants, on the other hand, are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), in that a substantial part of the events giving rise to the claims occurred in San Francisco, California.

**The Parties**

19. Citibank is one of the largest banking institutions in the United States, and is a national banking association organized under the laws of the United States with its main office at 5800 South Corporate Place, Sioux Falls, South Dakota, and its principal place of business in New York, New York. Citibank is a wholly owned, indirect subsidiary of Citigroup, Inc., which is a publicly traded company.

20. CGMI is a New York corporation with its principal place of business in New York, New York. CGMI is a wholly owned, indirect subsidiary of Citigroup, Inc., which is a publicly traded company. CGMI is a registered broker-dealer and is in the business of selling investment products and providing financial services to its customers. CGMI is a member firm of FINRA.

21. Mitchell is an individual who at all times relevant herein was employed and/or conducted business in San Francisco, California and is and was a citizen of California. Mitchell is currently affiliated with BMO in its San Francisco, California office. Mitchell was previously employed by Citi in its San Francisco branch office.

22. Carr is an individual who at all times relevant herein was employed and/or conducted business in San Francisco, California and is and was a citizen of California. Carr is currently affiliated with BMO in its San Francisco, California office. Carr was previously employed by Citi in its San Francisco branch office.

23. In connection with their status as registered representatives of CGMI, Defendants each executed a Form U-4 Uniform Applications for Securities Industry Registration or Transfer. By executing the Form U-4, Defendants agreed to submit to arbitration disputes, claims and controversies arising between themselves and Citi.

**Citi's Global Wealth at Work and Law Firm Group**

24. Citi provides a multitude of financial services to corporate, institutional, government and retail clients around the world. Citi Global Wealth at Work is a line of business for Citi that provides a suite of wealth management services – from investments to lending, banking and family wealth planning – to professionals (*i.e.*, lawyers, accountants, tech

professionals, private equity/venture capital professionals, etc.) and their firms. Banking products (such as checking accounts, loans and lines of credit) are offered through Citibank. Investment products (such as managed portfolios and investment advice) are offered through CGMI. Citi's Law Firm Group is a business unit within Citi Global Wealth at Work.

25. A typical Law Firm Group client will be assigned a Banker, such as Carr (to take care of their banking and lending needs), an Investment Counselor (to provide investment advice), a Financial Planner (to develop a long-term investment strategy) and a Wealth Planner (to address trust and estate needs).

26. Citi typically assigns a Banker (who is generally the point person on the team), such as Carr, to several law firms in a geographical area. Citi's relationship with every law firm is different. For many law firms, Citi has a business relationship with the firm itself, as well as with individual partners/associates. For many law firms, Citi may be the "preferred" banking/investment firm for individual partners/associates; for others, Citi may be on a short list of banks/investment firms that are recommended to individual partners and attorneys by the firm.

27. Citi's Law Firm Group serves more than 900 law firms across the country, including almost all of the law firms within the top 200 (as ranked by *The American Lawyer*). Citi has had a longstanding business relationship with a significant percentage of these law firms for many years, and in many cases, the relationship has existed for decades.

28. Thus, Citi Bankers in the Law Firm Group – which includes some of the other individuals who left with Defendants and who are being targeted by BMO – are not tasked with seeking out and securing new law firms as clients; indeed, they are prohibited from doing so. Rather, Law Firm Group Bankers are tasked solely with servicing Citi's pre-existing law firm clients. As indicated above, Citi has a strong banking/investment relationship with many of these law firms, as well as being a preferred or recommended bank/investment firm to their partners/associates.

29. As part of their official duties at Citi, Defendants had access to extensive confidential financial records and information about Citi's clients, including information about each client's investment needs. As explained in further detail below, such information – which is

not publicly available, and cannot be easily duplicated – is proprietary and valuable and would be especially useful to a competitor such as BMO.

### Defendants' Agreements with Citi

30. As noted above, at the time of his resignation, Mitchell was a Private Banker and Banker Team Lead Banker in the Law Firm Group, and held the title of Managing Director, working at a Citi office in San Francisco, California.

31. Mitchell commenced employment with Citibank in October 2002, where he worked as a Cash Management Associate in the Cash Management Department. On or about September 23, 2002, Citi sent an offer letter to Mitchell, which he accepted and counter-signed (the "Offer Letter"), as well as the attachments thereto: Citi's Principles of Employment and Citi's Employment Arbitration Policy.

32. Mitchell's Offer Letter and Principles of Employment, together attached to this Complaint as **Exhibit C,** both contain a confidentiality provision that requires him to maintain the confidentiality of Citi's confidential information during his employment and thereafter.

33. Specifically, in the Offer Letter, Mitchell agreed to maintain the confidentiality of Citi's confidential information both during and after the termination of his employment with Citi:

> You also agree that during your employment, you may have access to or acquire confidential, customer, employee, competitive and/or other business information that is unique and cannot be lawfully duplicated or easily acquired. You understand and agree that you will have a continuing obligation not to use, publish or otherwise disclose such information either during or after your employment with the Company. (Exhibit C at 1.)

34. Similarly, in Citi's Principles of Employment, which Mitchell signed, he agreed not to use, disclose, or retain any Citi confidential information after his employment with Citi ends:

> You must never use (except when necessary in your employment with us) nor disclose to anyone not affiliated with the Company any confidential or unpublished information you obtain as a result of your employment with us. This applies both while you are employed with us and after that employment ends. If you leave our employ, you may not retain or take with you any writing or other record that relates to the above. (Exhibit C at 1.)

35. At the time of his resignation, Carr was a Private Banker in the Law Firm Group, and held the title of Senior Vice President. Like Mitchell, Carr worked out of a Citi office in San Francisco, California.

36. Carr commenced employment with Citi Private Bank in 2016, after graduating from college. In December 2015, Citi sent an offer of employment to Carr, which he accepted and signed on December 12, 2015, and which also included Citi's Principles of Employment (which, on information and belief, is substantially identical to the Principles of Employment signed by Mitchell). At the commencement of his employment, Carr also agreed to and electronically counter-signed an Additional Terms Addendum. A true and correct copy of the Additional Terms Addendum is attached to this Complaint as **Exhibit D**.

37. The Additional Terms Addendum agreed to by Carr contains a provision requiring Carr to maintain the confidentiality of Citi's confidential and trade secret information, both during his employment and after his employment with Citi ends:

> <u>Confidential Information</u>. Except as other provided by applicable laws or regulations and/or in the "Exempted Disclosures" section below, during your employment and after your employment with Citi terminates for any reason, you are required to keep confidential any personal, proprietary, confidential and/or secret information of or regarding Citi that you may have access to or acquire during the course of your employment with Citi ("Confidential Information") . . . (<u>Exhibit D</u> at 3.)

38. In the Additional Terms Addendum, Carr also acknowledges and agrees that any breach of the confidentiality provision set forth therein will cause irreparable harm to Citi entitling Citi to injunctive relief to enforce its rights. Specifically, Section D of the Additional Terms Addendum provides that, should Carr breach the confidentiality obligations, he acknowledges and agrees that:

> . . . in addition to any other remedies, Citi will be entitled to injunctive relief to enforce these provisions, and you hereby consent to the issuance by a court of competent jurisdiction of a temporary restraining order, preliminary or permanent injunction to enforce Citi's rights herein. (<u>Exhibit D</u> at 3.)

39. On August 7, 2017, Carr electronically signed Citi's Joint Employment

Acknowledgement, confirming that Carr was employed by both Citibank and CGMI. A true and correct copy of the Joint Employment Acknowledgement is attached to this Complaint as **Exhibit E**.

40. The Joint Employment Acknowledgement agreed to by Carr also contains a provision requiring Carr to maintain the confidentiality of Citi's confidential and trade secret information, both during his employment and after his employment with Citi ends:

> **Confidential Information:** You understand and agree that in the course of performing activities for your Employers, you will have access to, or be exposed to, confidential and proprietary information and trade secrets about your Employers' businesses, including information about their customers. In this regard, **you acknowledge that such information, including the list, or lists, of customers, in whatever form, and as they may exist from time to time, and any other personal or financial information pertaining to such customers, including but not limited to their addresses, telephone numbers, investment objectives and risk preferences, are valuable, special and unique assets of your Employers' businesses that they have expended an immeasurable amount of time and money to acquire**.
>
> Except as otherwise provided by applicable laws or regulations and/or in the "Exempted Disclosures" section below, during your employment and after your employment with your Employers terminates for any reason, you are required to keep confidential any personal, proprietary, confidential and/or secret information of or regarding your Employers that you may have access to or acquire during the course of your employment ("Confidential Information"). You will be required to confirm your understanding of these obligations by signing Citi's Intellectual Property and Confidential Information Agreement included in your new hire paperwork. **You agree that upon termination of your employment with your Employers you will surrender to them all customer lists and all books, records, documents and other written information received in either paper or electronic form, copied, created or otherwise obtained by you which relate to your Employers' customers or businesses**. (Exhibit E ¶ 7(b) (emphasis added)

41. Similar to the Additional Terms Addendum, the Joint Employment Acknowledgement also contains a provision in which Carr acknowledges and agrees that any breach of the confidentiality provision set forth therein will cause irreparable harm to Citi entitling Citi to injunctive relief against him to enforce its rights. (Exhibit E at 7(c).)

**Citi's Confidential Information**

42. During the course of their employment with Citi, Defendants had access to Citi's highly confidential customer files and other information that is confidential and proprietary.

43. Citi's customer records contain confidential financial information regarding each client, including client names, addresses, telephone numbers, email addresses, transactional history, tax information, personal financial data, banking information and investment objectives, among other data. On information and belief, Defendants had no interaction with the vast majority of the clients they serviced at Citi (and no knowledge of their confidential information) until they started working at Citi. This information has been collected at great expense to the firm, is not easily duplicated, and would be extremely valuable to Defendants to use at a competitor firm such as BMO.

44. Citi's records concerning its customers are not publicly available or available from other sources and have been created and updated for a period of many years based on Citi's relationship with its clients. Citi has invested substantial corporate resources to develop and maintain its customer and employee information.

45. Citi has invested substantial time and money, totaling millions of dollars, to acquire, develop and maintain its customers over many years. It is with great difficulty, and only after a great expenditure of time, money and effort, that Citi was able to acquire its existing clients. Citi spends substantial resources in gaining knowledge about its clients and protecting the privacy of such information. It typically takes many years of dealing with clients for Citi to become their primary bank or investing firm. Citi clients typically remain with and continue to be serviced by the firm, regardless of whether team members resign or leave Citi. But for Defendants' employment with Citi, they would not have had any contact with the vast majority of the clients they serviced at Citi. Defendants had no prior brokerage or financial services industry experience prior to joining Citi and spent their entire careers with Citi until their resignations. Thus, on information and belief, Defendants brought no clients with them to Citi from a prior employer.

46. The confidential, proprietary, and trade secret information that, on information

and belief, Defendants have misappropriated and used at BMO was entrusted to Citi by its clients with the expectation that it would remain confidential and would not be disclosed to third parties. Defendants had access to this information solely by virtue of their employment by Citi. Defendants were obligated to maintain the confidentiality of this information.

47. For its part, Citi took numerous steps to protect the confidentiality of this information. Defendants were fully aware of, and responsible for, complying with Citi's internal policies regarding confidentiality. Citi has implemented numerous other policies, and has established tight security, to ensure the confidentiality of its client information. For example, access to the Citi computer network by employees is password-protected. Citi also limits access to its customers' information to only those employees working directly with such clients or and certain management supervising those employees, in addition to only a limited number of other employees who need access to such information.

48. Citi's customers are the lifeblood of its business. The expenditures incurred by Citi in obtaining its clients include the many thousands of dollars spent by Citi every year on national and local advertising, the millions of dollars it costs to train the Citi sales force, the millions of dollars a year Citi spends for sales support staff, clearing services, operations personnel, systems and support, management and compliance supervision, salaries, annual registration fees, computer services and equipment, phone, mail, research, literature, seminars, trade and other professional news publications, promotional events, the retention of experts, and the many other expenditures Citi incurs in maintaining its goodwill in the financial industry. Citi has borne the entire expense of these services and activities as well, with no financial contribution from Defendants.

49. Employees such as Defendants must maintain such customer information as strictly confidential. These instructions are confirmed in the various agreements and provisions referenced above.

**Defendants' Wrongdoing**

50. Defendants gave notice of their resignation to Citi on July 19, 2024, and their employment was voluntarily terminated, effective on October 2, 2024 as to Mitchell and August

2, 2024 as to Carr, after which they joined BMO.

51. As detailed above and incorporated herein, upon their departures from Citi, on information and belief, Defendants took or retained confidential and proprietary information relating to Citi and its clients and are now using such information at their new firm, BMO, a direct competitor of Citi. The confidential information that Citi believes Defendants improperly took or retained upon their departures includes information relating to client cash holdings and products, including the dates CDs held by Citi clients are set to mature.

52. On information and belief, without misappropriating Citi's confidential and proprietary information, Defendants would not have known the cash positions of Citi's clients or the maturity dates of the CDs held by Citi clients.

53. Citi also has been contacted by a Citi client formerly serviced by Mitchell who alleges that Mitchell contacted him prior to giving notice of his resignation on July 19, 2024. The Citi client alleges that Mitchell contacted him by phone and indicated that he would soon be resigning from Citi, moving to BMO, and explicitly asked the client to move his business to BMO.

54. On July 19, 2024, the same day that Mitchell gave notice of his resignation, Citi's counsel sent him a letter reminding him of his obligations to Citi, including his obligation not to remove or use Citi confidential client/employee information. BMO's General Counsel was copied on such letter. Accompanying the letter was a "Statement Under Oath" asking Mitchell to confirm that he had no Citi confidential information in his possession or had returned all such information. Mitchell never signed and returned the Statement Under Oath. A true and correct copy of such letter (with the unsigned Statement Under Oath) is attached to this Complaint as **Exhibit F** (without the Citi agreements annexed hereto).

55. On July 20, 2024, immediately after Carr gave notice of his resignation, Citi's counsel sent him a letter reminding him of his obligations to Citi, including his obligation not to remove or use Citi confidential client/employee information. BMO's General Counsel was copied on such letter. Carr did not respond to the letter. A true and correct copy of such letter is attached to this Complaint as **Exhibit G**.

56. Unless Defendants' conduct is immediately enjoined, Citi's confidential client information will continue to be disclosed to BMO or otherwise continued to be used by Defendants for their own personal benefit – to the great detriment of Citi. This misconduct is highly disruptive to Citi's ability to conduct business, and to maintain the confidentiality of its client information.

57. On information and belief, by using Citi's confidential client information, Defendants have caused and will continue to cause continuing and irreparable injury to Citi, which cannot be cured by monetary damages.

58. It is critical that Defendants, and all those acting in concert with them, be prohibited from using or disclosing Citi's confidential client information, and that Defendants be required to return such information immediately. Unless Defendants' conduct is immediately enjoined, any FINRA arbitration award will be rendered ineffectual, and Citi will suffer irreparable harm.

59. Defendants' misconduct is highly disruptive to Citi's ability to conduct business in a stable manner and to maintain Citi's goodwill with its clients. Unless Defendants' misconduct is immediately restrained and enjoined, other competitors of Citi will be encouraged to engage in the same kind of improper behavior with complete impunity, the result of which will inflict severe and permanent damages on Citi.

60. By improperly taking and using Citi's confidential client information, Defendants have caused and will continue to cause continuing and irreparable injury to Citi, which cannot be cured by monetary damages. Defendants' wrongdoing has caused and will continue to inflict irreparable harm to Citi by causing:

   a. Use and disclosure of Citi confidential and proprietary information, including client information;
   b. Loss of Citi clients, and loss of client confidence;
   c. Injury to Citi's reputation and goodwill in California;
   d. Damage to office morale and stability, and the undermining of office protocols and procedures; and

     e.    Present economic loss, which is unascertainable at this time, and future economic loss, which is now incalculable.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

61. Citi realleges and incorporates herein by reference the allegations of paragraphs 1 through 60 hereof.

62. Defendants breached their contracts and agreements with Citi by, on information and belief, taking Citi's confidential and proprietary business and client information upon their departure from Citi, using it as BMO, and sharing and disclosing it to BMO.

63. By failing to comply with the terms and obligations of their agreements with Citi, including, without limitation, those described above, Defendants have breached their contractual obligations to Citi. Defendants have breached their contractual obligations to Citi not to possess or use (post-termination) Citi's confidential and proprietary information.

64. Citi has performed all of its duties under all such contracts.

65. Citi has been injured and will continue to be injured by Defendants' breaches of their agreements with Citi in an amount which cannot readily be ascertained or compensated by money damages.

66. As a direct and proximate result of Defendants' breach of their contracts, Citi has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Citi is entitled to a temporary restraining order and a preliminary injunction.

## SECOND CAUSE OF ACTION

### (Misappropriation of Trade Secrets and Confidential Information)

67. Citi realleges and incorporates herein by reference the allegations of paragraphs 1 through 66 hereof.

68. Citi's confidential and proprietary business and client information derives substantial, independent economic value from not being generally known to the public or to Citi's competitors, who could obtain economic value from the information. Citi expended

substantial financial and human resources to develop this information, which cannot be easily acquired or replicated by others, from among the literally millions of actual or potential individual investors in the marketplace. Further, Citi has taken substantial efforts to maintain the secrecy of its confidential and proprietary business and customer information, including but not limited to restricting access to such information and designating such information as confidential. Accordingly, Citi's confidential and proprietary business and customer information constitutes trade secrets entitled to protection under the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq.*

69. Citi's trade secrets and confidential information are known only to certain persons at Citi, and are sufficiently secret and difficult to obtain that this information has economic value.

70. Citi's confidential and proprietary business information and documents are not known to Citi's competitors.

71. Citi's confidential and proprietary business information and documents cannot be duplicated by any of Citi's competitors without a significant expenditure of time, effort and expense.

72. As detailed above and incorporated herein, Citi goes to great lengths and expense to maintain the confidentiality of its trade secrets and confidential information, including restricting access to such information, password-protecting Citi's computer network, and implementing numerous internal policies to ensure the secrecy and confidentiality of its information.

73. In addition, Citi also required Defendants to sign and agree to confidentiality provisions in their contracts and agreements with Citi.

74. Citi is informed and believes, and on that basis alleges, that Defendants misappropriated Citi's trade secrets and confidential information, utilized the information at their new firm, and provided and disclosed such information to BMO.

75. Defendants have engaged in such activities without the express or implied consent of Citi and, indeed, in violation of its agreements and policies prohibiting such conduct. Defendants engaged in this conduct despite the fact that they knew or had reason to know that

their knowledge of Citi's trade secrets and confidential information was acquired under circumstances giving rise to a duty to maintain its secrecy and to limit its use.

76. As a direct and proximate result of Defendants' misappropriation of Citi's trade secrets and confidential information, Citi has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Citi is entitled to a temporary restraining order and a preliminary injunction.

### THIRD CAUSE OF ACTION

### (Conversion)

77. Citi realleges and incorporates herein by reference the allegations of paragraphs 1 through 76 hereof.

78. At all times, Citi was, and still is, entitled to the immediate and exclusive possession of its trade secrets and confidential and proprietary information, and all physical embodiments thereof, as alleged above.

79. Citi is informed and believes that Defendants took Citi's trade secrets and confidential and proprietary information, including but not limited to confidential client information, and converted such information for the use of Defendants and those acting in concert with them.

80. The continued detention of Citi's confidential information by Defendants constitutes conversion.

81. As a direct and proximate result of Defendants' conversion, Citi has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Citi is entitled to a temporary restraining order and a preliminary injunction.

### FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty/Duty of Loyalty)

82. Citi realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 81 hereof.

83. Defendants owed Citi a fiduciary duty and duty of loyalty during the term of their employment with Citi.

84. Defendants' fiduciary duty and duty of loyalty required them at all times to, among other things, act in Citi's best interests and maintain the confidentiality of Citi's confidential and proprietary business and customer information.

85. Defendants' duties required them to act in the best interests of Citi and not to engage in any action during their employment that is inimical to the best interests of Citi.

86. Defendants' fiduciary duties included a duty not to use or disclose Citi's confidential information for their own benefit or that of a third party.

87. By and through the conduct described above and incorporated herein, Defendants breached their duty of loyalty and fiduciary duty to Citi.

88. As a direct and proximate result of Defendants' breaches of their fiduciary duty and duty of loyalty, Citi has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Citi is entitled to a temporary restraining order and a preliminary injunction.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Citi respectfully requests that a judgment be entered in its favor against Defendants as follows:

A. In support of all claims for relief, a temporary and preliminary injunction lasting until such time as a duly appointed panel of arbitrators at FINRA renders an award in the underlying dispute on Citi's claims for permanent injunctive relief after a merits hearing, enjoining and restraining Defendants, their agents, employees, partners, and any others acting in concert with them or on their behalf, including the directors, officers, employees, representatives and/or agents of BMO, directly or indirectly, from:

    (i) using, disclosing or transmitting for any purpose Citi's books, records, documents and/or information pertaining to Citi, Citi's clients, and/or Citi's employees.

B. Ordering Defendants, and their agents, employees, partners, and any others acting in concert with them or of their behalf, to return to Citi or its counsel all records, documents and/or information in whatever form (whether original, copied, computerized, or handwritten)

pertaining to Citi, Citi's clients, and/or Citi's employees, within 24 hours of notice to Defendants or their counsel of the terms of such an order.

  C. Such other and further relief as the Court deems just and proper.

           Respectfully submitted,

DATED: November 20, 2024   **NUKK-FREEMAN & CERRA, P.C.**
             **PADUANO & WEINTRAUB LLP**

             _____
             Stacy L. Fode
             Natalie P. Bryans
             Leonard Weintraub
              (*pro hac vice* application forthcoming)
             Attorneys for Plaintiffs
             CITIBANK, N.A. and CITIGROUP GLOBAL MARKETS INC.

-19-
COMPLAINT