1   **FAEGRE DRINKER BIDDLE & REATH LLP**
    Paul J. Riehle (SBN 115199)
2   paul.riehle@faegredrinker.com
    Four Embarcadero Center, 27th Floor
3   San Francisco, California 94111
    Telephone:    +1 415 591 7500
4   Facsimile:    +1 415 591 7510

5   Tracey Salmon-Smith (*Pro hac vice*)
    tracey.salmonsmith@faegredrinker.com
6   600 Campus Drive
    Florham Park, New Jersey 07932
7   Telephone:    +1 973 549 7038
    Facsimile:    +1 973 360 9831

8
    Attorneys for Defendants
9   JOHN A. MITCHELL and BENJAMIN C. CARR

10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12

13
    CITIBANK, N.A. and CITIGROUP GLOBAL          Case No. 3:24-cv-08224 (CRB)
14  MARKETS INC.,
                                                 **DEFENDANTS' MEMORANDUM OF**
15              Plaintiffs,                       **POINTS AND AUTHORITY IN**
                                                 **SUPPORT OF ITS OPPOSITION TO**
16         v.                                    **PLAINTIFFS' APPLICATION FOR**
                                                 **TEMPORARY RESTRAINING**
17  JOHN A. MITCHELL and BENJAMIN C.             **ORDER, EXPEDITED DISCOVERY,**
    CARR,                                        **AND ORDER TO SHOW CAUSE RE:**
18                                               **PRELIMINARY INJUNCTION**
                Defendants.
19

20

21

22

23

24

25

26

27

28

Defendants' Memo. of Points & Authorities in Support of its Opposition to Plaintiffs' App. for
Temporary Restraining Order, Expedited Discovery, & Order to Show Cause re Preliminary Injunction
Case No. 3:24-CV-08224

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS ................................................................................... 3

    A.    Mr. Mitchell Has Not Improperly Solicited or Misappropriated Any Confidential Information.......................................................................... 3

    B.    Mr. Carr Did Not Take, Use, or Otherwise Appropriate Trade Secrets.................. 4

III.    ARGUMENT ....................................................................................................... 5

    A.    Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits .................. 5

    B.    Plaintiffs Did Not and Will Not Suffer any Irreparable Harm, and Monetary Damages, if any, Are Otherwise Available Through The Arbitration They Filed.......................................................................... 7

    C.    The Balance of the Equities Tip Heavily in Defendants' Favor ........................... 10

    D.    An Injunction is Against the Public's Interest ...................................................... 10

IV.    CONCLUSION ................................................................................................... 10

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANTS' MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' APP. FOR
TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
Case No. 3:24-CV-08224

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
    750 F.2d 1470 (9th Cir.1985)........................................................................................... 8, 9

*Barney v. Burrow*,
    558 F. Supp. 2d 1066 (E.D. Cal. 2008).......................................................................... 7, 9

*Bassett v. Callison*,
    No. 2:10-cv-0539 KJN P, 2010 WL 5393991 (E.D. Cal. Dec. 22, 2010)............................... 8

*Benisek v. Lamone*,
    585 U.S. 155 (2018) ................................................................................................. 5

*Best Fresh LLC v. Vantaggio Farming Corp.*,
    No.: 3:21-cv-00131-BEN-WVG, 2021 WL 5444755 (S.D. Cal. Sept. 20, 2021) ................... 6

*Cecil v. Beard*,
    No. 2:13-cv-1923 TLN KJN P, 2014 WL 6389580 (E.D. Cal. Nov. 13, 2014) ................... 8, 9

*D'sa v. Playhut, Inc.*,
    85 Cal. App. 4th 927 (2000).......................................................................................... 10

*Diodes, Inc. v. Franzen*,
    260 Cal. App. 2d 244 (1968).......................................................................................... 10

*Disney Enters., Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017).......................................................................................... 5

*Gilman v. Dalby*,
    176 Cal. App. 4th 606, 98 Cal. Rptr. 3d 231 (2009)........................................................... 6

*Golden v. Cal. Emergency Physicians Med. Grp.*,
    896 F.3d 1018 (9th Cir. 2018)........................................................................................ 10

*Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*,
    739 F.2d 466 (9th Cir. 1984).......................................................................................... 7

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
    736 F.3d 1239 (9th Cir.2013)....................................................................................... 8, 9

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
    634 F.2d 1197 (9th Cir. 1980)........................................................................................ 7

*La Jolla Cove Invs., Inc. v. Sultan Corp.*,
    No. 11CV1628 JM RBB, 2011 WL 4916138 (S.D. Cal. Oct. 17, 2011)................................ 6

ii

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' APP. FOR
TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
Case No. 3:24-CV-08224

*Lansdown v. Bayview Loan Servicing, LLC*,
  No. 22-CV-00763-TSH, 2023 WL 411348 (N.D. Cal. Jan. 25, 2023) .................................... 6

*Leo Middle E. FZE v. Zhang*,
  No. 21-CV-03985-CRB, 2021 WL 11592634 (N.D. Cal. Oct. 29, 2021) ............................. 6

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ........................................................................................................... 5

*Metro Traffic Control, Inc. v. Shadow Traffic Network*,
  22 Cal. App. 4th 853 (1994) ............................................................................................. 10

*Moss, Adams & Co. v. Shilling*,
  179 Cal. App. 3d 124 (1986) .......................................................................................... 6, 9

*Nguyen v. Stephens Inst.*,
  529 F. Supp. 3d 1047 (N.D. Cal. 2021) ............................................................................ 6

*Prasad v. CJ Inv. Servs., Inc.*,
  No. 23-cv-06532-RFL, 2024 WL 3646954 (N.D. Cal. Aug. 1, 2024)................................. 8, 9

*Titaness Light Shop, LLC v. Sunlight Supply, Inc.*,
  585 F. App'x 390 (9th Cir. 2014) .................................................................................... 5, 8, 9

*Whaley v. Belleque*,
  520 F.3d 997 (9th Cir. 2008)............................................................................................. 10

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................................................... 5

**Statutes, Rules & Regulations**

Cal. Bus. & Prof. Code § 16600 ........................................................................................... 10

Cal. Civ. Code § 3426.1 ......................................................................................................... 6

**Other Authorities**

https://www.citi.com/banking/current-interest-rates/cd; ........................................................ 4

iii

Defendants' Memo. of Points & Authorities in Support of its Opposition to Plaintiffs' App. for Temporary Restraining Order, Expedited Discovery, & Order to Show Cause re Preliminary Injunction
Case No. 3:24-CV-08224

Defendants John A. Mitchell and Benjamin C. Carr ("Defendants") respectfully submit the following Memorandum of Points and Authorities in support of their Opposition to Plaintiffs Citi Bank, N.A. and Citigroup Global Markets, Inc. ("Citi" or "Plaintiffs") Application for a Temporary Restraining Order/Order to Show Cause Regarding a Preliminary Injunction as follows:

## I.    INTRODUCTION

Plaintiffs' motion and unverified complaint are their latest attempt to punish their former employees for exercising their right to seek other employment.  After asserting claims against one of them in arbitration on essentially the same grounds, Plaintiffs now attempt to prevent Defendants from competing against them because they "*likely* took or retained confidential, proprietary information and are using it at BMO."  (ECF 1 ¶ 4 (emphasis added.)  Plaintiffs' assertions are baseless speculation and do not entitle Plaintiffs to the extraordinary relief they seek.  Most of the facts alleged by Plaintiffs are "upon information and belief."[1]  Indeed, the emergency and extreme relief they are seeking is based on conduct that allegedly occurred between four months and three weeks ago.  And, during this time, Plaintiffs also initiated an arbitration for damages against Mr. Mitchell and have now added Mr. Carr as a party to that proceeding.

Plaintiffs assert that Defendants were responsible for overseeing numerous accounts and hundreds of millions of dollars of assets.  Given the breadth of Plaintiffs' claims, one might assume they would assert and support substantial allegations of wrongful taking of confidential information or improper solicitation.  Plaintiffs' request for relief, however, is premised on only a *single* allegation against each advisor without adequate evidentiary support for the injunctive relief they seek.  *First*, Plaintiffs claim that Mr. Carr, who resigned over **four months** ago and observed a 60-day garden leave before joining BMO—despite no contractual obligation to do so—ran a few searches on Plaintiffs' computer systems related to clients he serviced before he left.  Plaintiffs do

---

[1] In particular, Plaintiffs make 13 allegations in the Complaint based on information and belief and two in their brief.  This includes their allegations that Defendants took and retained confidential information about Plaintiffs' clients (ECF 1 ¶¶ 5, 12, 51), that Defendants would not have known about Client A's cash position without misappropriating this information (*Id.* ¶ 52), and that Defendants will cause Plaintiffs irreparable harm (*Id.* ¶ 57).  The supporting declaration by Michael Remak (ECF 7-2) makes 12 allegations on information and belief, including allegations that Defendants took confidential information (*Id.* ¶¶ 13, 16, 43) and that Client A was part of the alleged results of the search performed by Mr. Carr. (*Id.* ¶ 14).

1

DEFENDANTS' MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' APP. FOR TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
Case No. 3:24-CV-08224

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

not attempt to explain why it took them 120 days (from July to November) to search their computer systems as to Mr. Carr (he last worked for Plaintiffs on August 2, 2024) and assert their claims. Instead, Plaintiffs superficially state what *one* of those searches allegedly revealed in support of their claims—without documentary evidence of the contents of that search or any of the other supposedly improper searches.  Nor do they provide any evidence that Mr. Carr downloaded or otherwise misappropriated this information.  Instead, they baldly assert that Mr. Carr must have copied or retained information from these searches and would have the Court infer that Mr. Carr provided this confidential information to Mr. Mitchell.  As Mr. Carr's declaration unequivocally states, however, he did not copy or take *any* confidential information.

*Second*, Plaintiffs do not allege that Mr. Mitchell—who observed a 75-day garden leave before joining BMO over 45 days ago—took *any* information.  Rather, Plaintiffs point to a *single* email sent a few weeks ago that contains generic and publicly available information.  It states Mr. Mitchell's new position at BMO and includes basic, public information relating to BMO's Certificate of Deposit ("CD") rates.  Mr. Mitchell's declaration unequivocally states that he did not receive, copy, reproduce, or otherwise take *any* confidential information, which is consistent with Plaintiffs' failure to produce any forensic evidence to the contrary.  What Plaintiffs fail to point out, of course, is that the third party at issue is a lawyer at a large law firm whose contact information is readily accessible through simple internet searches, as are the majority of Mr. Mitchell's clients.

Finally, Plaintiffs' allegation that Mr. Mitchell failed to respond to Plaintiffs' demand that he sign a pre-written statement under oath is false and misleading (ECF 1 ¶¶ 54-55).  On or about July 30, 2024, with the consent of Mr. Mitchell and his counsel, an attorney representing several of Mr. Mitchell's colleagues who had also decided to leave Citibank for BMO, advised Plaintiffs' counsel that Mr. Mitchell and his colleagues had not taken any confidential information prior to their resignations.  He then specifically requested that Plaintiffs' counsel advise him if any issues arose in the future so that he, or the attorneys representing other individuals, could work to resolve them.  Plaintiffs' counsel never reached out to him or Mr. Mitchell's attorney.

Plaintiffs' application lacks basic evidence and only serves to burden the limited resources

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2
DEFENDANTS' MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' APP. FOR
TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
Case No. 3:24-CV-08224

of this Court with their contrived claims.  We respectfully request that the Court deny them the injunctive relief they seek.

## II.    <u>STATEMENT OF FACTS</u>

### A.    Mr. Mitchell Has Not Improperly Solicited or Misappropriated Any Confidential Information

Defendants are Plaintiffs' former employees who now work at BMO Bank N.A. ("BMO"). *See* ECF 1.  Mr. Mitchell was previously a Managing Director at Citi.  Declaration of John A. Mitchell ("Michell Decl."), ¶ 2.  Mr. Mitchell decided to leave Citi and provided his notice of resignation on July 19, 2024.  *Id*. ¶ 3.  Citi had an Employment Termination Notice and Non-solicitation Policy for U.S. Employees ("Garden Leave Policy"), which required Mr. Mitchell to provide 75 days' notice prior to leaving Citi.  Mitchell Decl., Ex. A, at § 3.2.1.  Mr. Mitchell complied with the Garden Leave Policy, making his last day October 2, 2024.  *Id.*  Mr. Mitchell also complied with all other applicable aspects of the Garden Leave Policy; specifically, the prohibition on taking any information from or accessing Citi's systems to solicit clients during the notice period, a violation that allows Citi to terminate an employee for cause.  *See* Mitchell Decl., Ex. A, § 3.4.1.  Citi did not terminate Mr. Mitchell during the notice period.  Citi did not assert any allegations of malfeasance during these 75 days, including that Mr. Mitchell had downloaded, duplicated, or otherwise procured confidential information from Citi prior to leaving.  *Id*. ¶ 6.  Mr. Mitchell only accessed (without downloading or duplicating) information that he needed to service his clients and fulfill his obligations to Citi prior to his Garden Leave.  *Id.* at ¶ 14.

Mr. Mitchell continued to honor his contractual obligations to Citi once he started his new role at BMO.  Mr. Mitchell's former clients are nearly all partners who practice at large law firms. Mitchell Decl. ¶ 16.  Their contact information is listed on their publicly available firm websites. With respect to Client A, Mr. Mitchell emailed them on November 4, 2024, at the email address displayed on the individual's publicly available website.  Mitchell Decl. ¶¶ 23, 26.

Moreover, there is no trade secret information (*e.g.*, a unique formula, pattern, program,

device, method, technique, or process)[2] contained in the email Plaintiffs attached to their papers as Exhibit A.  In that e-mail, Mr. Mitchell:

•      informs the person that he is now at BMO and is seeking to connect;

•      asks if the person is amenable to a call;

•      offers to share deposit rates better than Citi;

•      observes this is relevant to the individual's cash position; and

•      details BMO's average percentage yield available for personal savings, personal checking money market, and CD rates for 3-, 6-, 9- and 12-month periods.

      The communication does not contain any Citi trade secrets.  Citi cannot claim that an individual's cash position is a trade secret.  The fact that an individual invests cash in CDs is also not a trade secret.  The use and availability of CDs is ubiquitous.  *Cf.* https://www.citi.com/banking/current-interest-rates/cd; with Certificate of Deposit Accounts (CDs) and Rates – BMO.  *See* Declaration of Tracey Salmon-Smith ("Smith Decl."), Exhibit A.

      Finally, there is no evidence that Mr. Mitchell downloaded Client A's individual account data.  He simply remembered—after having worked with them for years—that the individual had a cash position.  Mitchell Decl. ¶ 24.  Plaintiffs have advanced no evidence to overcome the veracity of Mr. Mitchell's declaration.

**B.      Mr. Carr Did Not Take, Use, or Otherwise Appropriate Trade Secrets**

      Mr. Carr is also a former Private Banker at Citi.  Declaration of Benjamin C. Carr ("Carr Decl."), ¶ 6.  While Mr. Mitchell and Mr. Carr worked together at times, they did not share all the same clients.  *Id.* ¶¶ 5-6.  Mr. Carr became a private banker at Citi in January 2022 and had his own client accounts.  *Id.*  Mr. Carr resigned on July 19, 2024, and his last day at Citi was August 4, 2024.  *Id.* ¶¶ 3-4.  Even though he was not subject to the Garden Leave Policy, he chose to join BMO on October 3, 2024 (more than two months after his last day at Citi).  *Id.* ¶ 17.  At all times during his employment with Citi, Mr. Carr honored his obligations.  Carr Decl. ¶ 10.  While he was employed by Citi, Mr. Carr accessed information in performing his duties in the ordinary course of

_____

[2] *See* Section III.A., *supra*.

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

business.  *Id*. ¶¶ 9-11.  He did not download, duplicate, or otherwise procure confidential information from Citi prior to leaving.  Carr Decl. ¶¶ 12-15, 18.  Nor did he transmit *any* Citi information to Mr. Mitchell.  *Id*.

Since commencing employment with BMO, Mr. Carr has also continued to honor his post-employment obligations to Citi and has not solicited clients using confidential information—again, as he did not take any.  *Id.* at ¶¶ 15-16.

### III.    ARGUMENT

A preliminary injunction is "an extraordinary remedy never awarded as of right."  *Benisek v. Lamone*, 585 U.S. 155, 157 (2018).  A "plaintiff seeking a preliminary injunction must establish" (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  A plaintiff must satisfy this test through a "clear showing" of evidence.  *Id*. at 22 (explaining that the "mere possibility of harm" is insufficient to grant an injunction).  The "clear showing" requirement is particularly strong when a party seeks a temporary restraining order ("TRO").  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  Accordingly, "conclusory or speculative allegations are insufficient to grant [a TRO]."  *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014).  Plaintiffs fall woefully short of meeting their high burden.  Their allegations are purely speculative—and are thoroughly rebutted by Defendants' declarations.

### A.    Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits

There is no likelihood of success on the merits and Plaintiffs' motion should be denied on this ground alone.  *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) ("Likelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors") (internal citations and quotations omitted).  Plaintiffs bring four interrelated claims:  (a) breach of contract, (b) violation of trade secrets, (c) conversion, and (d) breach of fiduciary duty/duty of loyalty.  Plaintiffs' causes of action all relate to the same allegation:  Defendants took and misappropriated confidential

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' APP. FOR
TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
Case No. 3:24-CV-08224

1    information for purposes of solicitation. But these allegations do not withstand scrutiny.

2         First, Defendants did not breach their contracts. Mr. Michell's contract specifically forbade

3    him from "retain[ing] or tak[ing] … any writing or other record." *See* ECF 1-3 at 1. However,

4    Plaintiffs do not allege that Mr. Mitchell copied *any* information. ECF 1. This is because Mr.

5    Mitchell did not retain or take any writing or other record or otherwise misappropriate any

6    information. *See* Mitchell Decl. ¶¶ 7-12. Likewise, Mr. Carr did not retain any writing or record

7    or misappropriate any information. *See* Carr Decl. ¶¶ 12-15. Plaintiffs' breach of contract claim

8    thus will not succeed on the merits. *See Lansdown v. Bayview Loan Servicing, LLC*, No. 22-CV-

9    00763-TSH, 2023 WL 411348, at *4 (N.D. Cal. Jan. 25, 2023) (no breach of contract where

10   Plaintiff cannot show breach of term); *see also Leo Middle E. FZE v. Zhang*, No. 21-CV-03985-

11   CRB, 2021 WL 11592634, at *1 (N.D. Cal. Oct. 29, 2021) (same).

12        The claims for conversion and breach of duty of loyalty fail for similar reasons. *See Nguyen*

13   *v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1058 (N.D. Cal. 2021) (claim for conversion cannot be

14   maintained where it is based on same conduct as the contract); *see also La Jolla Cove Invs., Inc. v.*

15   *Sultan Corp.*, No. 11CV1628 JM RBB, 2011 WL 4916138, at *2 (S.D. Cal. Oct. 17, 2011) (same

16   and further providing that conversion can only be maintained where a party deprived another of

17   property rights); *see also Best Fresh LLC v. Vantaggio Farming Corp.*, No.: 3:21-cv-00131-BEN-

18   WVG, 2021 WL 5444755, at *6 (S.D. Cal. Sept. 20, 2021) (parties must show "sufficient facts"

19   demonstrating a fiduciary duty existed and conduct alleging same was breached); *see also Gilman*

20   *v. Dalby*, 176 Cal. App. 4th 606, 614, 98 Cal. Rptr. 3d 231, 238 (2009) ("Absent [a fiduciary

21   relationship], a plaintiff cannot turn an ordinary breach of contract into a breach of fiduciary duty").

22   Accordingly, these claims fail as a matter of fact and law because they are duplicative of the breach

23   of contract claim.

24        Finally, Plaintiffs' trade secrets claim fails for two reasons: no information was

25   misappropriated, and the information Plaintiffs complain about is not a trade secret. Under the

26   Uniform Trade Secrets Act, "a trade secret is narrowly defined to include: information, including

27   a formula, pattern, compilation, program, device, method, technique, or process, that: Derives

28   independent economic value, actual or potential, from not being generally known to the public or

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' APP. FOR
TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
Case No. 3:24-CV-08224

to other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code § 3426.1. It is black-letter law that information such as names and publicly available information that can be obtained through servicing an account is not a protectable trade secret. *See, e.g.*, *Moss, Adams & Co. v. Shilling*, 179 Cal. App. 3d 124, 128-30 (1986) ("Under the rule of *Avocado Sales Co.* and *Theodore*, the names of Moss Adams' clients serviced by Shilling and Kenyon during the year preceding their resignations were not trade secrets, because the clients became known through personal contact and provision of accounting services."); *see also, e.g.*, *Barney v. Burrow*, 558 F. Supp. 2d 1066, 1081 (E.D. Cal. 2008) (clients serviced by financial advisors were not considered trade secrets). Indeed, Plaintiffs themselves have argued that client names are not trade secrets when opposing a preliminary injunction that sought to restrain one of its new financial advisors from working. There, Plaintiffs stated:

> The mere names of Mr. Urosevich's customers -- which is all that is at issue here -- are not "trade secrets." Mr. Urosevich personally knows all of these people. **The pertinent customer names are ingrained in his memory, and the customers' contact information is freely available (and was retrieved in part) through the internet and other public sources.**

*See* Smith Decl., Ex. B (emphasis added).

Moreover, the information contained in the email was not misappropriated from Plaintiffs. Mr. Mitchell found the email address by searching the internet. *See id.* (stating that obtaining information through publicly available sources is not a trade secret). Nor is any of the information contained within the email a trade secret.

**B.**   **Plaintiffs Did Not and Will Not Suffer any Irreparable Harm, and Monetary Damages, if any, Are Otherwise Available Through The Arbitration They Filed**

First, Plaintiffs' application must be denied for failure to demonstrate irreparable harm. Monetary damages, if any, could be readily calculated. *See Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 471-72 (9th Cir. 1984) ("mere financial injury, however, will not constitute irreparable harm if adequate compensatory relief is available in the course of litigation. Finding that plaintiff's harm would be easily calculable and compensable in damages."); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). In fact, Plaintiffs are already seeking money damages in FINRA relating to their claims that Defendants

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' APP. FOR
TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
Case No. 3:24-CV-08224

breached their contracts and misappropriated Plaintiffs' trade secrets. Plaintiffs should be directed to pursue these alleged damages in FINRA, and the instant application should accordingly be denied.

Second, it is axiomatic that irreparable harm cannot be established by statements that are "conclusory and without sufficient support in facts." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985); *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (irreparable harm cannot be established on "pronouncements [that] are grounded in platitudes rather than evidence."); *Titaness Light Shop, LLC.*, 585 Fed. Appx. at 391 (9th Cir. 2014) ("To establish a likelihood of irreparable harm, conclusory or speculative allegations are not enough.").

Plaintiffs cannot establish irreparable harm, as their application is based on speculation. Plaintiffs' core allegation is that their goodwill has been harmed by Defendants' wrongful taking of their trade secrets. ECF 1 at ¶¶ 12, 16, 51-52. This allegation is baseless and rebutted by Defendants' declarations. Mitchell Decl.; Carr Decl.; *Bassett v. Callison*, No. 2:10-cv-0539 KJN P, 2010 WL 5393991, at *3 (E.D. Cal. Dec. 22, 2010) (denying TRO where Defendant rebutted claims through evidence presented); *Prasad v. CJ Inv. Servs., Inc.*, No. 23-cv-06532-RFL, 2024 WL 3646954 (N.D. Cal. Aug. 1, 2024) (denying TRO where declarations credibly rebutted plaintiff's allegations); *Cecil v. Beard*, No. 2:13-cv-1923 TLN KJN P, 2014 WL 6389580, at *3 (E.D. Cal. Nov. 13, 2014) (denying TRO where evidence presented by defendant rebutted plaintiff's allegations)

The basis of Plaintiffs' claim appears to be that Mr. Carr performed a few searches on a system he had access to in the ordinary course of business. ECF 1 at ¶ 10. The allegations ignore that Mr. Carr had obligations to Citi to service his clients prior to resigning and during the resignation period. Carr Decl. ¶ 10. Plaintiffs do not explain the process they undertook to identify Mr. Carr's system activity or provide *any* documentary evidence of the results of their review. *See generally* ECF 1. Instead, Plaintiffs resort to a vague description of *one* of his alleged searches. *Id.* at ¶ 10; *see, e.g., Am. Passage Media Corp.*, 750 F.2d at 1473 (TRO must be denied when based on speculative or conclusory evidence); *Herb Reed Enters., LLC*, 736 F.3d at 1247 (9th Cir. 2013)

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' APP. FOR
TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
Case No. 3:24-CV-08224

1    (irreparable harm cannot be established on "pronouncements [that] are grounded in platitudes rather

2    than evidence").

3        Without evidence, Plaintiffs claim that Mr. Carr somehow duplicated or otherwise took this

4    unspecified information.  ECF 1 at ¶ 12.  Mr. Carr's declaration unequivocally states that he did

5    not take any information.  *See* Carr Decl. ¶¶ 12-15, 18; *see also Prasad*, 2024 WL 3646954, at *1;

6    *see also Cecil*, 2014 WL 6389580, at *3. Plaintiffs do not allege that Mr. Carr personally used the

7    information about which they complain.  *See generally* ECF 1.  Because Plaintiffs have no evidence

8    relating to Mr. Carr (there is none), they ask the Court to infer that Mr. Carr provided information

9    to Mr. Mitchell.  This is pure conjecture—Mr. Carr did not take any confidential information and

10   thus did not provide any confidential information to Mr. Mitchell.  Carr Decl. ¶¶ 12-15, 18-19;

11   Mitchell Decl. ¶¶ 29-31.  Moreover, the email address that was allegedly taken impermissibly is

12   publicly available and was obtained from the law firm's website. Mitchell Decl. ¶ 23.  As Mr.

13   Mitchell states in his declaration, he obtained this individual's email address from the law firm's

14   publicly available website.  *Id*.  Mr. Mitchell then provided CD rates available from BMO; his

15   general reference to Citi CD rates is based on available public, non-confidential information.  *Id*. ¶

16   26; *see, e.g.*, Salmon-Smith Decl., Ex. A.

17       Further, Mr. Mitchell's reference to the individual's cash position and the CD's expiration

18   were not the results of any information Mr. Mitchell took.  Rather, it was a result of his personal

19   knowledge of having managed Client A's account.  *Id.* ¶¶ 24-25.  Nor was there anything

20   proprietary about advising an individual to invest cash positions into an instrument such as a CD.

21   Basic information (such as names and publicly available information) obtained are not protectable

22   trade secrets.  *See, e.g.*, *Moss, Adams & Co.*, 179 Cal. App. 3d at 128-130 *see also, e.g.*, *Barney v.*

23   *Burrow*, 558 F. Supp. 2d at 1081 (individuals serviced by financial advisors were not trade secrets);

24   Smith Decl., Ex. B (Citi stating customer names developed through servicing accounts are not trade

25   secrets).  Plaintiff's allegations fall well short of what is needed to show irreparable harm.  *See*

26   *Titaness Light Shop*, 585 F. App'x at 391 (party failed to prove its goodwill was damaged where

27   allegations of harm were "conclusory and speculative"); *see also Am. Passage Media Corp.*, 750

28   F.2d at 1473; *see also Herb Reed Enters.*, *LLC*, 736 F.3d at 1247.

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9
DEFENDANTS' MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' APP. FOR
TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
Case No. 3:24-CV-08224

**C.       The Balance of the Equities Tips Heavily in Defendants' Favor**

Now that it is in their interests to do so, Plaintiffs have reversed course on the position they previously took when they asserted that customer information is not a trade secret.  *See* Salmon-Smith Decl., Ex. B.  Judicial estoppel—also known as the doctrine of preclusion of inconsistent positions—prevents Citi from "gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position."  *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008).

The equities also tilt in Defendants' favor, given California's strong public policy favoring worker mobility.  *See, e.g.*, *D'sa v. Playhut, Inc.*, 85 Cal. App. 4th 927, 933 (2000) (citing *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 255 (1968)) ("the interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change").  Plaintiffs' application should accordingly be denied.

**D.       An Injunction is Against the Public's Interest**

California has a "strong public policy" against professional restraints and in favor of economic mobility.  *See Golden v. Cal. Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1023-26 (9th Cir. 2018) ("California's 'strong public policy' against professional restraints 'should not be diluted by judicial fiat'"; "California's legislature has clearly expressed its disapproval of contracts that restrain lawful business and professional activities, and we are bound to heed that policy judgment wherever its logic applies."); *see also Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 859 (1994) (stating that California courts have consistently declared California Business Code and Professions Code Section 16600 to be an expression of public policy to ensure that every citizen shall have the right to pursue any lawful employment and enterprise of their choice).  Given this, it would be antithetical to California law to allow Plaintiffs to obtain this drastic remedy—especially given that their application is based on nothing more than speculation and conjecture.

**IV.       CONCLUSION**

For the reasons stated above, the Court should deny Plaintiffs' application.

1

2

Dated: November 25, 2024                    FAEGRE DRINKER BIDDLE & REATH LLP

3

4                                            By: */s/ Paul J. Reihle*
                                                 Paul J. Riehle
5                                                Tracey Salmon-Smith (*Pro hac vice*)

6                                            Attorneys for Defendants
                                             JOHN A. MITCHELL and BENJAMIN C.
7                                            CARR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' APP. FOR
TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY, & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
Case No. 3:24-CV-08224